Filed 5/21/25  P. v. Melendez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B325462 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA090940) |
| v. | |
| ALFONSO MELENDEZ, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Reversed and remanded.

John A. Colucci, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

Alfonso Melendez, Jr. (defendant) argues the trial court should have sustained a defense objection under Code of Civil Procedure section 231.7 (section 231.7) contesting the prosecution's exercise of a peremptory challenge against a Black female prospective juror who reported a negative experience with law enforcement approximately nine years earlier in an out-of-state jurisdiction.  We agree the objection should have been sustained because the peremptory strike was presumptively invalid under the statute and the reason the prosecutor articulated for striking the prospective juror did not "bear on the prospective juror's ability to be fair and impartial in the case." (§ 231.7, subd. (e).)

# II.  PROCEDURAL BACKGROUND[1]

The Los Angeles County District Attorney (District Attorney) charged defendant with (1) the premeditated murder of Ruben Garcia (Pen. Code, § 187, subd. (a)[2]), (2) shooting at an inhabited dwelling (§ 246), and (3) two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).[3]  With respect to

---

[1]   Because the underlying facts of the conviction are not relevant to our analysis of the issue on appeal, we do not discuss them in this opinion.

[2]   All further statutory references are to the Penal Code.

[3]   The District Attorney also charged defendant with the attempted premeditated murder of one of the dwelling's residents

the murder charge, the District Attorney also alleged that defendant personally used and personally and intentionally discharged a firearm causing death or great bodily harm (§ 12022.53, subds. (b)–(d)), and that defendant's 2010 conviction for first degree burglary constituted a "strike" within the meaning of the Three Strikes Law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) as well as a prior serious felony (§ 667, subd. (a)).

Following trial—and the prospective juror voir dire that will be the focus of our discussion—the empaneled jury found defendant guilty of premeditated murder, shooting at an inhabited dwelling, and two counts of being a felon in possession of a firearm, and found true the firearm enhancements. Defendant admitted his prior conviction.

The trial court imposed an aggregate sentence of 75 years to life plus a consecutive 14-year term.

## III.  DISCUSSION

Defendant argues the trial court erred under section 231.7 by ruling that the prosecutor's decision to exercise a peremptory challenge against a prospective juror was valid.  We review such rulings de novo and the court's "express factual findings" for substantial evidence.  (§ 231.7, subd. (j); *People v. Uriostegui* (2024) 101 Cal.App.5th 271, 279.)

---

(§§ 187, subd. (a), 664), and assaulting that resident with a semiautomatic weapon (§ 245, subd. (b)).  The jury acquitted defendant of those charges.

3

A.     *Prospective Juror Voir Dire*

At defendant's trial in 2022, Prospective Juror No. 0880 was questioned after the parties had already excused seven of the original 18 jurors questioned.  She was a single Black woman with no children who lived in Canoga Park and worked as a restaurant server.  In response to a list of questions composed by the trial court that were put to all the prospective jurors (the precise wording of which the record does not reveal), Prospective Juror No. 0880 reported two interactions with law enforcement or the criminal justice system.  She explained her mother had been the victim of an assault in Indiana, where Prospective Juror No. 0880 was from, and she reported that she herself had been charged with a "DUI" in Indiana in 2013 (or possibly 2014).  The court asked Prospective Juror No. 0880 how she thought "the system" worked and whether she believed she was treated fairly or unfairly with respect to her DUI charge.  Prospective Juror No. 0880 responded that she was treated "[f]airly, to some extent, yes."  The court also asked Prospective Juror No. 0880 about the assault on her mother, and Prospective Juror No. 0880 said a full criminal trial was held for her mother's assailant.  The court again asked Prospective Juror No. 0880 whether she thought the system worked well and whether her mother was treated fairly or unfairly and Prospective Juror No. 0880 responded, "Fairly, yes."

After the prospective jurors answered the trial court's prepared questions, the parties' attorneys conducted their own voir dire.  Counsel for defendant asked Prospective Juror No. 0880 whether her prior encounters with law enforcement were "going to affect" her in any way, either for or against the defense or the prosecution.  Prospective Juror No. 0880

4

responded, "I don't know because I think it was like based on the circumstances of listening to the evidence." Defense counsel then asked Prospective Juror No. 0880 what she first thought when she heard the charges against defendant and she said "[o]bviously, murder is very serious . . . but at the same time he is innocent until proven guilty. We don't know the facts."

Defense counsel then inquired further about Prospective Juror No. 0880's "fairly, to some extent" statement about her DUI charge and she explained, "I would just say they saw what happened to me as being a Black woman living in Indiana. I would say that—I mean, they did everything that they did right, but I'm just not sure that everything went the way it was supposed to, like throughout the entire process of my situation." Asked to elaborate, Prospective Juror No. 0880 said after she was released some of her belongings were missing and she wondered whether everything was "proper as far as like searching people . . . ." Defense counsel asked Prospective Juror No. 0880 if she thought these issues were because of her race, and she said, "Maybe. Maybe not. I'm not a hundred percent sure." Defense counsel then asked "[a]s it relates to your experience relating to the DUI, [and your] mom, will you hold any of that against [defendant] or against the prosecution or vice-versa?" Prospective Juror No. 0880 responded "[n]o." After asking about gangs and guns, defense counsel asked the prospective juror whether there was "[a]nything else relating to the case or experiences that might make it difficult for [her] to be fair and impartial in this case" and Prospective Juror No. 0880 again said "[n]o."

Shortly after the defense questioning of Prospective Juror No. 0880, court proceedings ended for the day without the

exercise of any peremptory challenges. The next court day, the prosecutor conducted his voir dire of the prospective jurors. The prosecutor posed several questions generally to the prospective jurors he had not previously had an opportunity to voir dire, including Prospective Juror No. 0880.[4] The only questions the prosecutor posed to Prospective Juror No. 0880 specifically concerned her prior DUI charge. The prosecutor confirmed Prospective Juror No. 0880 said she was treated fairly to some extent, and when asked whether there was some hesitation in her voice, Prospective Juror No. 0880 said "[n]o."

The prosecutor then asked whether what he characterized as her "concern" involved "the integrity of the police as some of [her] property was missing when [she] got it back." Prospective Juror No. 0880 answered "[y]es." The prosecutor asked if she suspected the police had stolen her property, and Prospective Juror No. 0880 responded, "I mean or misplaced. You know what I mean? I'm not a hundred percent sure. I wouldn't like put it on them that they actually took it, but I mean it was in their possession. So I would assume what was given to them from me was going to be given back to me." The prosecutor also asked Prospective Juror No. 0880 if she believed the police in Indiana had searched her car without legal justification and she said,

---

[4] These questions included whether they had ever been to a public housing project (Prospective Juror No. 0880 answered yes), whether anyone felt "there's always more to the story" beyond what was presented in court (Prospective Juror No. 0880 answered no), and whether everyone was "okay" with the principle that they would have to judge the matter based on the evidence presented and not questions they might "dream up" (Prospective Juror No. 0880 answered yes).

6

"[y]es." The prosecutor did not inquire further, as defense counsel had done earlier, into whether and how her experience with the police in Indiana might affect her ability to be fair and impartial in defendant's case.

The prosecutor did not exercise any challenges for cause, but exercised his first peremptory challenge against Prospective Juror No. 0880. Defendant objected outside the presence of the jury on section 231.7 grounds. Defense counsel told the trial court he had discussed the prospective juror with the prosecutor the prior evening (presumably during the overnight break between the defense voir dire of Prospective Juror No. 0880 and the prosecution's voir dire). Defense counsel believed that the prosecutor was "trustworthy and has integrity" but the challenge to the prospective juror was improper under the statute.

In response to the defense objection, the prosecutor made extensive comments on the record. He maintained he was exercising a peremptory challenge against Prospective Juror No. 0880 because she "articulated at least twice . . . that in her 2013 DUI arrest, she was treated, . . . 'fairly to some extent,'" which meant "there is an unfair portion of how she was treated." The prosecutor conceded that his reason for the peremptory challenge—that the prospective juror "ha[d] a negative experience with law enforcement"—was "presumptively invalid" under section 231.7, but he asserted the presumption of invalidity could be overcome if the trial court believed it was highly probable that the peremptory challenge was unrelated to conscious or unconscious bias and "bear[s] on the [prospective] juror's ability to be fair and impartial in this case."

To argue that the presumption was rebutted, the prosecutor contended that "[w]ith 20 peremptory challenges, [his]

7

main concern on a case like this where the evidence is strong is jurors who have an integrity concern with law enforcement.  It does not matter what their background is.  [¶]  . . .  [¶]  If you have a prior interaction with law enforcement that gives them misgivings, they are not good for [him] on this case, and it has nothing to do with any protected class."  The prosecutor further noted he intended to exercise a peremptory challenge to another juror (Prospective Juror No. 1194) who made a similar remark that the criminal justice system was "somewhat fair" and had previously accepted the panel of jurors as then constituted to include another Black woman.  The prosecutor expressed a belief he had carried his burden to overcome the presumption of invalidity because he had shown it was "highly probable" that his reasons were "unrelated to conscious or unconscious bias and are instead specific to the [prospective] juror that bear on the [prospective] juror['s ability] to be fair and impartial in this case . . . ."

The trial court overruled the defense section 231.7 objection and allowed the prosecutor to use a peremptory strike against Prospective Juror No. 0880.  The court stated its rationale:  "I observed this process.  We have a . . . group of minorities who are in the panel.  The current 12 include two Black women.  The [prosecution] have not had any sort of pattern trying to excuse either for cause or by peremptory challenge members of the minority groups.  [¶]  And I think that the reasons given by [the prosecutor] do overcome the presumption. . . . Now, there is no case law on these issues.  This is a relatively new law.  So it may be the Court of Appeal decides otherwise.  But I am going to allow this peremptory challenge on the basis that [the prosecutor] articulated."

B.    *Analysis*

    1.    Legal Principles

    "The Legislature enacted section 231.7, effective in criminal trials beginning January 1, 2022, to establish 'a new process for identifying unlawful bias in the use of peremptory challenges during jury selection' because studies showed that the existing *Batson/Wheeler*[5] analysis . . . was inadequate to prevent racial discrimination . . . .  Discrimination in violation of this section need not be purposeful, but may involve 'unconscious bias,' which 'includes implicit and institutional biases.'" (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 539–540.)

    Section 231.7 prohibits the "use [of] a peremptory challenge to remove a prospective juror on the basis of the prospective juror's [actual or perceived] race," as well as six other protected characteristics.  (§ 231.7, subds. (a), (i).)  Once an objection to a peremptory challenge is made, the party exercising the challenge must "state the reasons the peremptory challenge has been exercised." (*Id.*, subd. (c).)  The trial court's evaluation of that reason or reasons turns on what those reasons are.  If the party's stated reasons for the challenge fall under any of 13 statutorily enumerated categories,[6] including a challenge to prospective

_____

[5]    *Batson v. Kentucky* (1986) 476 U.S. 79, 89 and *People v. Wheeler* (1978) 22 Cal.3d 258.

[6]    The statute lists three other "presumptively invalid" reasons that deal with a prospective juror's behavior or demeanor in court or when answering questions.  (§ 231.7, subd. (g)(2);

9

jurors who "[e]xpress[ ] a distrust of or hav[e] a negative experience with law enforcement or the criminal legal system" (§ 231.7, subd. (e)(1)), a presumption of invalidity is triggered that operates to disallow the peremptory challenge unless rebutted. To rebut the presumption under the statute, the party seeking to exercise a peremptory challenge must "show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation . . . and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case[.]" (§ 231.7, subd. (e).) By its grammatical structure (the repetition of the word "that" and the absence of any delimiting commas) and as clarified in subdivision (f) of the statute, a party must make a clear and convincing showing on two elements: (1) unrelatedness to a protected category and (2) bearing on a juror's ability to be fair and impartial.[7] (§ 231.7, subd. (f) ["To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead

_____

*People v. SanMiguel* (2024) 105 Cal.App.5th 880, 889 (rev. granted Dec. 18, 2024, S287786) [noting how subdivision (e) and (g) "provide two separate lists of presumptively invalid reasons for exercising a peremptory challenge"].)

[7]    Where a party rebuts the presumption of invalidity, the trial court is charged with "'evaluat[ing] the reasons given . . . in light of the totality of the circumstances.'" (*People v. Gonzalez* (2024) 104 Cal.App.5th 1, 13.)

10

specific to the juror and bear on that juror's ability to be fair and impartial in the case"].)

## 2. Analysis

It is undisputed that the prosecutor's peremptory challenge to Prospective Juror No. 0880 was presumptively invalid because it was based on that juror's "[e]xpress[ion of] a distrust of or having a negative experience with law enforcement or the criminal legal system." (§ 231.7, subd. (e)(1).) Accordingly, we consider whether the prosecutor rebutted the presumption with "clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race . . . , and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case[.]" (§ 231.7, subd. (e).)

We will assume for purposes of this discussion that the prosecutor's stated reason for using a peremptory challenge on Prospective Juror No. 0880 was unrelated to the prospective juror's race. We therefore consider whether the prosecution demonstrated, by clear and convincing evidence, that "the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." Here, the prosecutor did not develop evidence showing it was highly probable that the reason he gave bore on Prospective Juror No. 0880's ability to be fair and impartial in defendant's case. The prospective juror repeatedly confirmed she could be fair and impartial in defendant's case, and the prosecutor did not ask her any questions on this point; there was no attempt to probe for a *possible* link between her DUI experience with officers in Indiana nearly a decade prior and her

11

ability to judge fairly defendant's culpability for murder and other crimes in California.[8]  Even having apparently considered the matter overnight outside the bustle of a trial courtroom, the prosecutor instead appears to have assumed that a temporally and geographically remote experience with law enforcement that was somewhat negative made the prospective juror less likely to vote to convict regardless of the evidence.  Peremptory challenges are not challenges for cause, but, such evidence-free supposition is insufficient to establish a reason that bears on a juror's ability to be fair and impartial, which is necessary to rebut the presumption of invalidity.

The trial court's ruling does not ameliorate the evidentiary shortcoming.  The court, understandably given the dearth of law when it ruled, made only one express finding:  that there had been no pattern of exclusion of minority prospective jurors during voir dire.  That finding is well supported by the record, but the issue is not compliance with *Batson/Wheeler*.  This is principally an appeal challenging a ruling under section 231.7, which was enacted because the legislature believed the *Batson/Wheeler* analysis was inadequate to prevent unconscious bias from excluding certain groups from juror service and makes certain

---

[8]     Even considered on its own terms (without exploration of a possible link to defendant's case), Prospective Juror No. 0880 expressed an *unwillingness* to believe the Indiana officers stole the property she did not get back after her DUI charge.  If anything, this tends to show a baseline tendency to trust, not distrust, those officers.  To be sure, she did express a belief that the Indiana officers searched her car without justification, but the prosecutor never developed any facts about how or why her car was searched, or how her DUI case resolved.

justifications for exercising a peremptory challenge presumptively invalid regardless of intent.  The court incorrectly concluded that the presumption had been rebutted solely for the reasons articulated by the prosecutor, which we explained were insufficient.  Applying section 231.7, we are compelled to reverse and remand for a new trial.

## IV.   DISPOSITION

The judgment is vacated and the cause is remanded for a new trial.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


I concur:


BAKER, J.

*People v. Melendez*, B325462

HOFFSTADT, P. J., dissenting:

I would affirm the judgment of conviction because, in my view, the trial court did not violate Code of Civil Procedure section 231.7[1] in upholding the prosecutor's exercise of a peremptory challenge against Prospective Juror No. 0880.

As the majority notes, section 231.7 supplants the subjective intent-based framework for evaluating whether the use of peremptory challenges is impermissibly based on a protected characteristic, and replaces it with an objective, "reasonable person"-based framework. (§ 231.7, subds. (a), (d) & (e).) Section 231.7 obligates the striking party to "state [its] reasons" for the strike (*id.*, subd. (c)): If, as pertinent here, those reasons match any of the 13 statutorily enumerated reasons deemed to be "presum[ptively]" "invalid," the strike is invalid unless the party rebuts the presumption with a showing "by clear and convincing evidence that [(1)] an objectively reasonable person would view the rationale as unrelated to a prospective juror's race . . . , and that [(2)] the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (*Id.*, subd. (e).) This standard is met only if "it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead

---

1      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.*, subd. (f).)

It is undisputed that the prosecutor's stated reason for exercising a peremptory strike against Prospective Juror No. 0880—namely, that she was treated "fairly" only "to some extent" during her 2013 DUI arrest—is a presumptively invalid reason because it was based on the prospective juror's "negative experience with law enforcement." (§ 231.7, subd. (e)(1).)

Because the majority assumes that the prosecution has carried its burden of showing that its stated reason for striking Prospective Juror No. 0880 is unrelated to her race, the validity of that strike under section 231.7 comes down to whether the prosecution has established by clear and convincing evidence that the stated reason bears on Prospective Juror No. 0880's ability to fair and impartial in this case.

In my view, the prosecution has carried its burden. The prosecutor told the trial court that he was striking Prospective Juror No. 0880 because her comment that she was "treated . . . 'fairly to some extent'" "means . . . there is an unfair portion of how she was treated" (because the "police stole or lost her property" and "searched her vehicle without lawful cause"); that this experience gave her "misgivings about the criminal justice system" and caused her to "have an integrity concern with law enforcement"; and that they are "not good for [the prosecution] on this case." Reading this explanation in light of Prospective Juror No. 0880's earlier statements to defense counsel equivocating as to whether she would "hold those experiences . . . against [defendant] . . . or against the prosecution," the prosecutor sought to excuse Prospective Juror No. 0880 because her personal negative interaction with law enforcement gave rise to an

2

"integrity concern with law enforcement" that called into question her ability to be fair and impartial. Because the prosecutor's concern was grounded in Prospective Juror No. 0880's uncertainty about whether she would "hold [her] experiences . . . against the prosecution," the prosecutor's concern bears on Prospective Juror No. 0880's ability to be fair and impartial in this case.

The majority's contrary conclusion rests on what it perceives as the prosecution's "evidentiary shortcoming" in not "prob[ing] for even a *possible* link between [Prospective Juror No. 0880's] DUI experience with officers in Indiana nearly a decade prior and her ability to judge fairly defendant's culpability for murder and other crimes in California," and for instead trying to link the two with "evidence-free supposition." (Italics in original.) In light of the juror's professed uncertainty about not "hold[ing]" her past experiences "against [the parties]" in this case, there *is* a sufficient link between those experiences and her ability to be fair and impartial in this case. What the majority characterizes as an "evidence-free supposition," I view as a fair and rational inference. While a prosecutor is always free to ask further questions that make the link more explicit, to *require* it in the midst of the hurly burly of jury selection is to place an unrealistic burden on litigants, at least where, as here, the striking party elicits and establishes a factual basis for this link. Although a juror cannot be excused under section 231.7 simply because they had a negative experience with law enforcement (*People v. Jaime* (2023) 91 Cal.App.5th 941, 947), I would distinguish the situation—present here, contrary to the majority's selective reading of the record—where the prospective juror's negative

experience translates into uncertainty as to whether that juror can be fair and impartial.

In this regard, this case is a lot like *People v. Gonzalez* (2024) 104 Cal.App.5th 1 (*Gonzalez*).  There, a prospective juror reported that law enforcement had mishandled the investigation of his cousin's murder because they had left the cousin's body on the ground for two hours and "'treated [his family] like [they were] gang members.'" (*Id.* at pp. 9-10.)  He also indicated that, when he was a preteen, the police pulled up to him and his friends playing basketball, ordered them to "'put [their] hands on the hot hood' of the police car," and "beat [their] hands with a flashlight when they tried to move." (*Id.* at p. 10)  The juror in *Gonzalez* said he was "'bitter'" and "'frustrat[ed]'" by these interactions with police, initially indicating that he "'d[idn't] know'" if he could be "part of the justice system" as a juror and not hold these experiences against any testifying officers, but later affirmed that he "would listen to the evidence and 'be fair and impartial to both sides.'" (*Ibid.*)  The court in *Gonzalez* ruled that the prosecutor's reason for striking the juror was presumptively invalid because the juror's "past experiences were related to his race," but the presumption was overcome by the juror's "multiple uncertain and noncommittal responses regarding impartiality." (*Id.* at pp. 17-18.)  This case is similar insofar as Prospective Juror No. 0880 had personal negative experiences and, as defendant acknowledges in indicating that it was "not entirely clear" whether she could be fair, Prospective Juror No. 0880 equivocated about whether she would hold those experiences against the prosecution or defense in this case. (Accord, *People v. Jimenez* (2024) 99 Cal.App.5th 534, 541-544 (*Jimenez*) [presumption of invalidity rebutted where juror felt

4

that law enforcement had an "'institutional'" bias against "non-white patrons" and indicated she would "'have a difficult time'" fairly evaluating the testimony of law enforcement witnesses].)[2]

Because I conclude that the presumption of invalidity has been rebutted, I must next ask whether "there is a substantial likelihood that an objectively reasonable person"—that is, a person who is "aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California"—"would view [actual or perceived] race . . . as a factor in the use of the peremptory challenge." (§ 231.7, subds. (d)(1), (d)(2)(A); *Gonzalez, supra*, 104 Cal.App.5th at p. 16.)

I do not believe that standard is met here for two reasons.

First, the prosecutor's proffered reason that Prospective Juror No. 0880 expressly stated "misgivings about the criminal

---

[2] I also reject the argument—advanced by defendant but not reached by the majority—that a prospective juror's negative experiences with law enforcement can never justify a peremptory challenge in a case, like this one, where no law enforcement official testifies at trial because, in such cases, the integrity of law enforcement is not an issue. It is unsupported by the text of section 231.7, which does not erect a rule of irrebuttable invalidity under these circumstances. It is also unsupported by logic. Although no law enforcement officer took the stand, the integrity of conduct by law enforcement officers was still very much at issue: They were the ones who collected and tested all of the forensic evidence as well as the ones who orchestrated the conversation between defendant and the undercover officer in jail; a juror who questions the integrity of law enforcement would likely view with a jaundiced eye all of the evidence derived as the fruit of law enforcement efforts.

5

justice system" is not explicitly based on Prospective Juror No. 0880's race.

Second, the statutorily enumerated "circumstances" bearing on the trial court's determination do not establish a substantial likelihood that an objectively reasonable person would view race to have been an implicit factor in the prosecutor's strike. The actual and perceived racial identities of the pertinent individuals undermine a finding that race was a factor: Defendant and Prospective Juror No. 0880 are of different races (defendant and the victim are Latino, while Juror No. 0880 is Black).[3] (§ 231.7, subd. (d)(3)(A); *Gonzalez, supra*, 104 Cal.App.5th at p. 19 [looking to surnames for perceived racial identity is appropriate].) The race of those pertinent individuals also does not "bear on the facts of the case to be tried." (§ 231.7, subd. (d)(3)(B).) The prosecutor questioned Prospective Juror No. 0880 extensively about her ability to be fair and impartial, which was the reason later articulated for the strike, and questioned other jurors on their ability to be fair and impartial whenever their answers suggested negative experiences with law enforcement. (*Id.*, subd. (d)(3)(C).) The prosecutor also exercised challenges against jurors of other cognizable groups—namely, Prospective Juror No. 1194, who was Latina—who provided "similar, but not necessarily identical, answers." (*Id.*, subd. (d)(3)(D).) Although, as defendant notes, the prosecutor had accepted Juror No. 1194 as a juror two times before striking

---

[3] Although defendant suggests that Prospective Juror No. 0880 may be of "mixed race" (that is, part Black and part Latina), this is based on nothing but speculation: Juror No. 0880 identified herself as "Black," and defense counsel also referred to her as Black.

6

Juror No. 0880 at which time the prosecutor indicated an intent to also strike Juror No. 1194, this sequence—while cutting to some extent in favor of a finding of differential treatment—is not fatal because, as noted above, the prosecutor did eventually excuse Juror No. 1194 and because Juror No. 1194's answers regarding law enforcement bias were arguably not "similar" to Juror No. 0880's. Where, as here, a presumptively invalid reason has been rebutted, whether the reason "might be disproportionately associated with a race" has already been considered and need not be considered again. (§ 231.7, subd. (d)(3)(E); *Gonzalez*, at p. 20.) The prosecutor's stated reason was supported by the record. (§ 231.7, subd. (d)(3)(F).) And there is no evidence that the prosecutor's office had a "history of prior" discriminatory peremptory strikes. (*Id.*, subd. (d)(3)(G).) Another factor not enumerated by statute but which also counsels against the substantial likelihood that an objectively reasonable person would view Prospective Juror No. 0880's race as a factor in the prosecutor's use of the challenge includes the prosecutor's decision not to seek to strike Juror No. 9279 (another Black woman seated in the box) prior to striking Juror No. 0880 and the prosecutor's decision not to strike two Black jurors subsequently seated in the jury box.

Defendant responds with two arguments.

First, defendant challenges three aspects of my analysis. To begin, he asserts that it is wrong to conduct a "comparative juror" analysis—that is, wrong to look at how the prosecutor subsequently treated other similar jurors. The plain text of section 231.7 seems to refute this assertion, as it charges courts with examining how the party striking a juror has questioned and treated other jurors. To the extent section 231.7 prohibits a

7

court from using a party's post-striking activity to justify an earlier strike, such conduct does not play a large role in our analysis because the sole juror to whom such analysis might be relevant—Prospective Juror No. 1194—never wavered about whether she could be fair in this case.  Further, defendant argues that the facts that the prosecutor left one Black juror on the panel and that defendant is not of the same race as Prospective Juror No. 0880 do not definitively justify the prosecutor's strike.  This is true, but my analysis treats these factors as relevant, not dispositive.  Defendant emphasizes that a prosecutor's good faith is irrelevant under section 231.7.  This is also true, but I am not relying upon the prosecutor's subjective state of mind.

Second and lastly, defendant argues that the prosecutor's strike also violated *Batson/Wheeler*.  I conclude there was no *Batson/Wheeler* violation for the same reasons I conclude section 231.7 was not violated.  (*Jimenez, supra*, 99 Cal.App.5th at p. 548; *People v. Ortiz* (2023) 96 Cal.App.5th 768, 807-808.)

For these reasons, I would affirm the judgment.


_____, P. J.
HOFFSTADT

8